OPINION Colvin, Judge: This case is before the Court on respondent’s motion to dismiss for lack of jurisdiction. For reasons discussed below we will deny respondent’s motion. Petitioners commenced this whistleblower proceeding pursuant to section 7623(b)(4).[1] Respondent then moved to dismiss for lack of jurisdiction, and petitioners filed an objection to respondent’s motion. Neither party requested a hearing, and we conclude that none is necessary to decide respondent’s motion. For purposes of deciding respondent’s motion, we consider the following undisputed information contained in the pleadings and documents relating to respondent’s motion to dismiss. Background Petitioners resided in Illinois when they filed the petition. On February 6, 2012, petitioners filed with the Internal Revenue Service (IRS) a Form 211, Application for Award for Original Information. The form was forwarded to the IRS Whistleblower Office in Ogden, Utah. The Whistleblower Office processed petitioners’ application as four separate claims designated with numbers ending in 48, 49, 50, and 51. The Whistleblower Officer treated two of the claims (48 and 49) as if they had been made only by petitioner husband and the two other claims (50 and 51) as if they had been made only by petitioner wife. The record does not indicate why the Whistleblower Office treated petitioners’ application as four separate claims.[2] The Whistleblower Office denied petitioners’ claims in four separate letters. The two letters sent to petitioner husband dated October 30, 2012, stated: We have considered your application for an award dated 01/11/12. Under Internal Revenue Code Section 7623, an award may be paid only if the information provided results in the collection of additional tax, penalties, interest or other proceeds. In this case, the information you provided did not result in the collection of any proceeds. Therefore, you are not eligible for an award. Although the information you submitted did not qualify for an award, thank you for your interest in the administration of the internal revenue laws. If you have any further questions in regards to this letter, please feel free to contact the Informant Claims Examination Team at * * *. Sincerely, /s Cindy Wilde Supervisor — Whistleblower Office, Ogden The Whistleblower Office denied petitioner wife’s claims in two substantially identical letters dated November 15, 2012. Petitioners received the four letters (2012 letters) in November 2012. None of these letters refers to a determination or states that a determination had been made. Around January 18, 2013, petitioners sent a letter to the Whistleblower Office in which they stated that they were submitting additional information and making additional claims for the years covered by the 2012 letters. The Whistle-blower Office replied by letter dated February 12, 2013 (February 2013 letter). The February 2013 letter referred only to claim No. 48 and stated: We considered the additional information you provided and determined your claim still does not meet our criteria for an award. Our determination remains the same despite the information contained in your latest letter. Please keep in mind the confidentiality of the informants’ claims process and understand that we cannot disclose the facts surrounding an examination, i.e. taxes collected and audit examination. Although we are closing this claim, we appreciate your interest in the compliance with the tax laws and in the Informants’ Claims for Award Program. Sincerely, /s Cindy Wilde Supervisor — Whistleblower Office, Ogden Petitioners filed a petition with this Court on March 19, 2013, under section 7623(b)(4). Petitioners mailed the petition to the Court in an envelope postmarked March 14, 2013. Discussion The issue for decision is whether we have jurisdiction as a result of petitioners’ filing a petition within 30 days after respondent mailed the 2013 letter. I. Introduction The Tax Court may exercise jurisdiction only to the extent expressly provided by Congress. See sec. 7442; Breman v. Commissioner, 66 T.C. 61, 66 (1976); see, e.g., Rules 13, 340(b). Section 7623(b)(4) provides that this Court has jurisdiction with respect to matters addressed in any determination made in response to a whistleblower claim under section 7623(b). More specifically, section 7623(b)(4) provides that “[a]ny determination regarding an award under paragraph (1), (2), or (3)[3] may, within 30 days of such determination, be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter).” Thus, this Court has jurisdiction under section 7623(b)(4) when (1) the IRS makes any determination regarding an award under section 7623(b)(1), (2), or (3); and (2) a petition invoking our jurisdiction over that matter is timely filed. See Kasper v. Commissioner, 137 T.C. 37, 41 (2011). To decide whether we have jurisdiction, first we consider whether the 2013 letter constitutes a determination under section 7623(b)(4). Second, if it constitutes a determination, we decide what effect, if any, the 2012 letters had on petitioners’ opportunity to invoke our jurisdiction under section 7623(b)(4) upon receipt of the 2013 letter. II. Whether the 2013 Letter Is a Determination Under Section 7623(b)(4) We first decide whether the 2013 letter is a determination for purposes of section 7623(b)(4). Petitioners filed the petition within 30 days after the Whistleblower Office sent the 2013 letter.[4] That letter stated in pertinent part that “|w]e considered the additional information you provided and determined your claim still does not meet our criteria for an award”, “our determination remains the same”, and “we are closing this claim.” [5] The 2013 letter was the only letter the Whistleblower Office sent to petitioners stating that a determination had been made on their claim. By referring to the determination and stating that the claim was being closed, the letter made clear that the administrative process had concluded. See Cooper v. Commissioner, 135 T.C. 70, 72-76 (2010) (holding that a letter rejecting whistleblower claims was a determination for purposes of section 7623(b)(4) where the letter included the clause “‘an award determination * * * [could not] be made’”); see also SECC Corp. v. Commissioner, 142 T.C. 225, 229 (2014) (holding that a letter not identified as a determination but stating that “[t]he employment tax liability as determined by Appeals will be assessed and you will receive a Notice and Demand for payment of the tax, penalty, and interest owed” was a determination for purposes of section 7436(a)). A letter rejecting a whistleblower claim can be a determination under section 7623(b)(4) even if it is not formatted as a determination. See Whistleblower 11332-13W v. Commissioner, 142 T.C. 396, 398, 404 (2014); Cooper v. Commissioner, 135 T.C. 70. We have reached a similar holding in other contexts. See SECC Corp. v. Commissioner, 142 T.C. at 231; Corbalis v. Commissioner, 142 T.C. 46, 57-58 (2014) (holding that letters stating they were not final determinations with respect to interest abatement were final determinations for purposes of section 6404(h)); Craig v. Commissioner, 119 T.C. 252, 259 (2002) (holding that a form decision letter issued after a CDP hearing erroneously labeled as an “equivalent hearing” was a determination conferring jurisdiction under section 6330(d)(1)); Lunsford v. Commissioner, 117 T.C. 159, 164 (2001) (holding that a written notice to proceed with a collection action constituted a determination under section 6330). The 2013 letter contained a statement on the merits of petitioners’ whistleblower claim, referred for the first time in a letter to claimants to a “determination” made on that claim, and did not indicate that further administrative procedures were available to petitioners.[6] We conclude that it constitutes a determination for purposes of section 7623(b)(4).[7] III. The Effect, If Any, of the 2012 Letters on Our Jurisdiction Over the 2013 Letter We next consider respondent’s contention that we lack jurisdiction over the petition filed in response to the 2013 letter because it was filed untimely as to the 2012 letters. A. Respondent’s Argument Respondent’s contention that the petition was untimely is based on opinions of this Court in Friedland v. Commissioner, T.C. Memo. 2011—90 (Friedland I), and Friedland v. Commissioner, T.C. Memo. 2011-217 (Friedland II) (collectively, Friedland cases). In the Friedland cases, the Whistle-blower Office sent to the claimant a letter in response to which the claimant did not file a petition, and the Whistle-blower Office later sent another letter in response to which the claimant filed a petition. We held that we lacked jurisdiction in both of those cases. We discuss infra part III.B. the texts of the 2012 letters in this case and the letters sent in the Friedland cases. We conclude infra part III.C. that, unlike the letters in the Friedland cases, the 2012 letters do not affect petitioners’ opportunity to invoke our jurisdiction over the 2013 letter. B. Respondent’s Letters Sent to Whistleblower Claimants in This Case, the Cooper Case, and the Friedland Cases Cause Confusion About the Claimants’ Opportunity To Seek Review in This Court. In considering the effect, if any, the 2012 letters had on our jurisdiction over the petition filed in response to the 2013 letter, we will review the text of letters sent by the Whistle-blower Office to claimants in the instant case, the Friedland cases, and, to provide perspective, the letter sent in Cooper. The 2012 letters stated that petitioners are not eligible for an award and invited them to contact the Whistleblower Office. As stated supra p. 276, the 2012 letters stated that “you are not eligible for an award” and that “[i]f you have any further questions in regards to this letter, please feel free to contact the Informant Claims Examination Team” at a phone number stated in the letter.[8] The letter rejecting the whistleblower claim in Cooper v. Commissioner, 135 T.C. at 72, stated that “‘an award determination * * * [could not] be made under section 7623(b)’ because petitioner ‘did not identify * * * federal tax issue[s] upon which the IRS will take action.’ ” (Fn. ref. omitted.) The letter also indicated that an award was not warranted for either claim because the taxpayer’s information did not “result in the detection of the underpayment of taxes.” Id. We held that the letter contained a determination for purposes of section 7623(b)(4) and that we have jurisdiction over the petition timely filed on the basis of that letter. Id. at 75-76. In Friedland I the whistleblower received four letters from the Whistleblower Office relating to his claim. The first letter, dated November 13, 2009, denied the claim and made no reference to further administrative procedures available to the whistleblower. In addition, the Whistleblower Office sent a letter to the claimant in Friedland I stating that “he would have to appeal the determination through the court system, not the Whistleblower Office.” Friedland I, slip op. at 6. The claimant in Friedland I was also the claimant in Friedland II. In Friedland II the claimant received three letters from the Whistleblower Office relating to his claim. The first of those letters, dated March 3, 2011, denied the claim and made no reference to administrative procedures available to the whistleblower. Whatever the significance of the differences among these letters, we do not expect whistleblower award claimants to parse letters they receive from the Whistleblower Office to identify slight variations in those letters for clues as to whether the 30-day period to file a petition has commenced. As discussed below, section 7623(b)(4) does not impose this burden. C. Respondent’s Argument Gives Insufficient Regard to the Text of Section 7623(b)(4). As noted supra p. 277, section 7623(b)(4) provides that this Court has jurisdiction with respect to matters addressed in “any” determination issued in response to a whistleblower claim under section 7623(b). The Tax Court did not expressly consider the significance of the grant of jurisdiction in section 7623(b)(4) over “any” timely petitioned determination in Cooper,[9] in the Friedland cases, or in any other prior opinion. We do so here. The word “any” does not modify “determination” in any other statute describing our jurisdiction. In comparison, section 6015(e) provides our jurisdiction to determine whether a taxpayer who filed jointly is entitled to relief from joint liability after the Commissioner sends to the taxpayer a “final” determination. By providing the Tax Court with jurisdiction over “any” timely petitioned determination, section 7623(b)(4) in some respects parallels section 6212. Section 6212 authorizes the Commissioner to send more than one notice of deficiency for a taxable period unless the taxpayer has timely filed a Tax Court petition in response to a prior notice of deficiency for that taxable period.[10] This aspect of section 6212 shows that in another area of our jurisdiction — deficiency cases — a petitioner may file a petition in response to more than one letter from the Commissioner. Petitioners received letters from the Whistleblower Office in 2012 in response to which they did not file a petition and a letter in 2013 in response to which they did file a petition. Because section 7623(b)(4) provides this Court with jurisdiction over “any” determination, we hold that we have jurisdiction over the petition filed in response to the 2013 letter.[11] If it were otherwise, the Commissioner could largely frustrate judicial review by issuing ambiguous denials that did not seem to be, but were, determinations. Section 7623(b)(4) provides an opportunity for petitioners to file a petition in response to the 2013 letter even though they did not file a petition in response to the 2012 letters. The Court has gained a broader perspective on issues arising in the developing whistleblower area in the time since we decided the Friedland cases. In particular, we have considered here distinctive language in section 7623(b)(4)— i.e., “\a\ny determination” (emphasis added) — that was not discussed by the Court in the Friedland cases. Taking into account this broader perspective and the language of the statute, the Court will not follow the holdings in the Friedland cases to the extent they state or imply that it is not possible for the Whistleblower Office to issue, as to a given claim, more than one “determination” on which our jurisdiction might be based. IV. The Joint Concurring Opinion The joint concurring opinion by Judge Halpern and Judge Lauber agrees with the Court that we have jurisdiction here but prefers an alternative basis for our jurisdiction. We base our jurisdiction on the text of the 2013 letter, while the joint concurring opinion would base our jurisdiction on petitioners’ representations about materials they sent to the Whistle-blower Office after receiving the 2012 letters. The “main concern with the opinion of the Court” expressed in the joint concurring opinion is “the way it handles the Friedland cases”, which the joint concurring opinion would distinguish on their facts. See joint concurring op. pp. 288, 291-292. Contrary to the suggestion of the joint concurring opinion and as demonstrated by the difference of opinion evidenced between this report and the joint concurring opinion, reasonable minds may differ as to the breadth and contours of the holdings in the Friedland cases. Indeed, the joint concurring opinion finds it necessary to resort to the record in Friedland I to draw conclusions about its holding that are not apparent or inevitable from the text of the opinion itself. See joint concurring op. p. 288. We believe that the need to delve into the record of Friedland I to posit a theory of the scope of its holding illustrates as well as anything can that both Friedland cases are susceptible to the types of interpretations which we expressly disapprove today without the need to decide hypothetical issues not before us in this case. In addition, while it is possible, as the joint concurring opinion does, to parse the Friedland cases and find factual nuances that might be thought to distinguish them in one way or another from this case, ultimately the factual distinctions are so tenuous that seeking to define our jurisdiction by reference to them risks contributing to confusion for claimants as to the proper time for filing a petition, as described infra pp. 287-288 of the joint concurring opinion, while also increasing the burdens on the Court. The joint concurring opinion states that in Friedland II the claimant provided no new information to the Whistleblower Office after receiving the first letter and in Friedland I the claimant furnished additional information consisting not of factual documentation but of alleged legal authority that the Court found to be gratuitous, joint concurring op. pp. 290-291; but here, in contrast, petitioners “apparently” provided 300 additional documents supporting and expanding their claims. See id. p. 291. Thus, the essential difference between the analysis of the opinion of the Court and that of the joint concurring opinion is that the opinion of the Court bases our Court’s jurisdiction on the text of the 2013 letter, and the joint concurring opinion would find jurisdiction because petitioners represent that they made new claims and submitted additional materials to the Whistleblower Office after receiving the 2012 letters. However, the dispute between petitioners and the Whistle-blower Office about the significance of those additional materials could not be more stark. Petitioners state that on January 18, 2013, they provided 300 documents supporting and expanding their claims (in addition to 500 documents they say they provided in their original submission to the Whistleblower Office).[12] In contrast, on the basis of the flat rejection of petitioners’ claim made by the 2013 letter, it appears that the Whistleblower Office completely disagreed with petitioners’ expansive representations about additional materials. The joint concurring opinion thus accepts as a basis for our jurisdiction petitioners’ unverified assertion that the additional materials are new or noteworthy. We believe this could invite abuse by unconscientious claimants in future cases.[13] Equally problematic, it would be burdensome and awkward for the Court to verify claimants’ assertions about the newness or significance of additional materials by comparing them to the materials originally submitted to the Whistle-blower Office — all to decide not the merits of the case but merely the threshold question of jurisdiction. The joint concurring opinion envisions the following process for delving into potentially massive amounts of materials merely to resolve jurisdiction: “If there is any uncertainty about * * * [whether petitioners made additional claims supported by additional documentation], the Court has ample tools at its disposal, from stipulations to evidentiary hearings, to eliminate that uncertainty.” See joint concurring op. p. 291. The joint concurring opinion would “resolve any doubt against respondent as the movant and in petitioners’ favor and we treat their followup letters as making a different or supplemental claim.” See id. This approach is further explained as follows: “If there are factual uncertainties that must be resolved before ruling on a motion to dismiss, the proper procedure is to resolve them or to assume facts as not favoring the movant (respondent).” See id. note 2. Thus, using the approach urged by the joint concurring opinion, claimants’ assertions about the newness or significance of their claims would be assumed correct unless the Court undertakes a hearing (using for purposes of discussion petitioners’ assertions about the record here) to see whether the 300 additional documents raise new or noteworthy claims compared to the 500 documents previously submitted. We find it unnecessary to address those knotty factual matters in deciding our jurisdiction and instead base our jurisdiction on the text of the 2013 letter. The joint concurring opinion misstates the Court’s holding as follows: “The Court[] hold[s] that a claimant may file a petition, at his option, in response to any of a series of [identical] letters referring to the denial of his claim”. See id. p. 295. On the contrary, the Court provides no views on a hypothetical case involving “any of a series of [identical] letters” and simply decides that the 2013 letter constitutes a determination and that its status as a determination is not negated, as respondent contends in reliance on the Friedland cases, by the fact that the Whistleblower Office sent the 2012 letters. The joint concurring opinion criticizes the statute because it fails “to specify an unambiguous ‘ticket to the Tax Court’ ”. Joint concurring op. pp. 287-288. The joint concurring opinion also disagrees with the reliance by the opinion of the Court on the statute’s grant of our jurisdiction over “any” determination. See id. p. 294. The joint concurring opinion would provide jurisdiction here only if the 2013 letter acted on a new, different, or supplemental claim. See id. p. 291. In contrast, we simply apply the plain language of the statute in the most straightforward fashion, giving effect as best we can to every word that Congress enacted, including the word “any”. V. Conclusion In deciding whether we have jurisdiction, we are mindful that “[w]here a statute is capable of various interpretations, we are inclined to adopt a construction which will permit the Court to retain jurisdiction without doing violence to the statutory language. See Lewy v. Commissioner, 68 T.C. at 781, 783-786 [1977]”. Smith v. Commissioner, 140 T.C. 48, 51 (2013). Congress intended to provide a whistleblower claimant with the opportunity to invoke our jurisdiction after the Commissioner acts on the claim. To date many of those letters we have seen do not give claimants clear notice that the statutory 30-day period to file a petition has begun to run. We believe that adoption of the Commissioner’s contentions in this case would create an unnecessary trap for individuals seeking to invoke our jurisdiction under section 7623(b). We conclude that the 2013 letter constitutes a determination for purposes of section 7623(b)(4). To reflect the foregoing,[14] An appropriate order denying respondent’s motion to dismiss will be issued. Reviewed by the Court. Thornton, Foley, Vasquez, Gale, Gustafson, Paris, Morrison, and Nega, JJ., agree with this opinion of the Court. Unless otherwise indicated, section references are to the Internal Revenue Code in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. We round monetary amounts to the nearest dollar. Neither party contends, nor do we believe, that the fact that the Whis-tleblower Office used four letters in 2012 instead of one to deny petitioners’ application has any bearing on the issues in dispute in this case. 3 Para. (1) generally requires that the IRS award an individual anywhere from 15% to 30% of the proceeds the IRS collects as a result of pursuing an administrative or judicial action based on information furnished by an individual. Para. (2) generally provides that if proceeding with the action was primarily based on certain information other than that furnished by the individual, the award should be no more than 10% of the collected proceeds. Para. (3) provides that the IRS may reduce or deny an award otherwise payable under para. (1) or (2) if the individual planned or initiated the conduct he or she reported. Respondent does not challenge the timeliness of the petition as to the 2013 letter. Our holding is based on the text of the 2013 letter. Petitioners contend that they provided 300 additional documents supporting and expanding their claims. In holding that we have jurisdiction we have not considered the substance or significance of additional information petitioners submitted after they received the 2012 letters. We discuss infra pp. 283-284 an alternative ground for jurisdiction favored by Judge Halpern and Judge Lauber in their joint concurring opinion and based on petitioners’ disputed claims about the significance of these additional documents. In contrast, for example, 30-day letters sent by the Examination Division typically state a proposed result and invite the taxpayer to seek review by the IRS Office of Appeals. It is well established that no particular words are required for our jurisdiction under sec. 7623(b)(4). Cooper v. Commissioner, 135 T.C. 70, 75 (2010). In describing the text of the 2013 letter in the accompanying text, we do not mean to imply that any of the particular words in the 2013 letter must be present in letters sent by the Whistleblower Office in other cases in order for this Court to have jurisdiction. We do not have before us a petition filed in response to the 2012 letters, and so we have no occasion to express our views as to whether we would have had jurisdiction if petitioners had filed a petition in 2012. In Cooper we found that the determination over which we exercised jurisdiction was “final”. We did not have before us a determination which was not “final”, and so in Cooper we made no holding regarding whether we would have jurisdiction over a determination which is not final. Sec. 6212 provides in pertinent part as follows: SEC. 6212. NOTICE OF DEFICIENCY. (a) In General. — If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitle A or B or chapter 41, 42, 43, or 44, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail. * * * (c) Further Deficiency Letters Restricted. — (1) General rule.— If the Secretary has mailed to the taxpayer a notice of deficiency as provided in subsection (a), and the taxpayer files a petition with the Tax Court within the time prescribed in section 6213 (a), the Secretary shall have no right to determine any additional deficiency of income tax for the same taxable year, * * * See also Gmelin v. Commissioner, T.C. Memo. 1988-338, aff’d without published opinion, 891 F.2d 280 (3d Cir. 1989). Dictionary definitions are entirely consistent with everyday understanding of “any”. The American Heritage Dictionary 81 (5th ed. 2011) defines “any” as follows: “adj. 1. One, some, every, or all without specification * * * 2. Exceeding normal limits, as in size or duration”. Similarly, in defining “any”, Webster’s Third New International Dictionary 97 (2002) states: “adj. 1. : one indifferently out of more than two: one or some indiscriminately of whatever kind: a: one or another * * * b: one, no matter what one * * * c: one or some of whatever kind or sort * * * 2. one, some or all indiscriminately of whatever quantity * * * 3. a: great, unmeasured, or unlimited in amount, quantity, number, time, or extent”. Of course, when construing the word “any” (as when construing any statutory term), we avoid literalistic interpretations that would contradict congressional intent or produce absurd results. Cf. Util. Air Regulatory Grp. v. EPA, 573 U.S. _,_, 134 S. Ct. 2427, 2439-2445 (2014). Because the claimed 800 documents are not in the record, we cannot confirm petitioners’ description of the submissions. This discussion relates to possible future cases and not to the conduct of petitioners. While the February 2013 letter referred only to what the Whistle-blower Office treated as one of four claims, the record does not show in what respect it may have been a denial of part, instead of all, of petitioners’ claim, and so we treat it as a denial of petitioners’ entire claim.